Case number 18-1510, People v. Marcosino. Good afternoon. Assistant State's Attorney Brian Levitsky on behalf of the people. May it please the court. The circuit court's orders in this case were incorrect for two reasons. First, there was an error in the order.  There was no Fourth Amendment violation in this case where Trooper Leonard Rouse's actions are reasonable under all the circumstances, particularly under this community caretaking doctrine. And second, even assuming the defendant could establish that it was a Fourth Amendment violation, he still failed to establish that he had a legitimate expectation of privacy in the rental car. The only information we know is that he was the sole occupant of it. Turning to the first issue, the defendant failed to establish that it was a Fourth Amendment violation in this case. As this court is well aware, and as Rob Regas made clear, law enforcement officers who are monitoring traffic often perform several tasks which aren't related to ordinary criminal investigation. They stop someone on the road, and they do so for the purpose of a traffic stop. The purpose of this stop includes not only issuing the citation, if there is one, but also related safety and checks and determining whether or not the car is simply being driven responsibly. Counselor, can I ask you, as far as Rob Regas is concerned, when the officer made the stop, the driver provided his license, proof of insurance, and registration. Is that right? In this case? In Rob Regas. In Rob Regas. Correct. In Rob Regas, I believe that was the case. Right. But he was detained, and then they did something else other than what had to do with the traffic stop, right? Correct. So the officer in Rob Regas gave the motorist a warning, a written warning. After that, determined, without any suspicion of criminal activity, to extend the duration of the stop by eight minutes for the purpose of simply doing a sniff search of the canine. So, can you distinguish this case, our case, on appeal, from Rob Regas? Absolutely, Your Honor. That's because the call to Hertz in this case, which is what we're really here talking about, was part of the purpose of the traffic stop, which was to determine whether or not the car was being responsibly driven. It was divorced from ordinary criminal investigation, which is what the Supreme Court of Ron Regas was concerned about with the dog sniff. Let me ask you this. The police officer testified that he did not suspect the car was stolen. Am I right? Correct. So what do you mean his further investigation was to see whether it was being responsibly driven? What does that mean? Well, it's to determine whether or not he was an authorized driver, which is what a registration check is to do in the first place. But you would think the car was stolen, so whether he's an authorized driver. I think the defendant testified that when he handed the rental agreement to the police officer, he told him that his name was not on it. The defendant did not testify at the hearing. Trooper Lindroth testified. Trooper Lindroth. So the defendant said that it seems from the record that the volunteer got information, and Trooper Lindroth also received the rental agreement itself. But he said he didn't think the car was stolen, so he didn't think the car was stolen. And I think the trooper also said he had never in the past looked into whether or not a person was an authorized driver, that he had stopped a rental car, a person driving a rental car before. So what was different about this stuff? So there are two questions here. First off, he said that there's nothing that the defendant's conduct makes him think that it was so suspicious that he thought that the car was stolen. But that doesn't mean the defendant was authorized to drive that car, which is why Trooper Lindroth. Is it a crime to be driving a car that you're not authorized to drive under the rental agreement? Is that a crime? Well, the defendant wasn't. The car was not reported stolen, was it? It was not reported stolen. Trooper Lindroth did issue a defendant, or did charge the defendant with criminal trespass of the vehicle based on the fact that he was not an authorized driver. Yeah, but that's putting the cart before the horse. He didn't think the car was stolen. He stopped the defendant for a speeding ticket. Speeding. It was a class B misdemeanor. And then he detained him for almost a half hour while he checked with Hertz to find out something else, although he didn't think the car was stolen. What was the purpose of that? Again, Your Honor. I'm trying to figure out what is the safety check that you are arguing. How does that factor into the car being driven safely? So I think we're going to clarify. I think Rodriguez tells us that there's safety concerns, which might include whether or not the driver of the vehicle might be impaired, whether there's a turn signal that's out, something like that. There's other related concerns that just go to whether or not the car is being responsibly driven, such as a license check, a registration check. And there are other concerns as well as just a warrant check. What about insurance? Do we know this car was insured under the driver's name? We don't have any information about that. Isn't that a concern the police officer would have? Right. But the question was never asked. I understand that. But I'm just saying, we'll look objectively at what the police officer did. Correct. Right? And so wouldn't a reasonable police officer in that situation think, boy, I wonder if this car is insured because part of my safety responsibility is making sure that cars are driven with insurance? Could that have been objectively a reason the officer made the phone call then to Hertz? Absolutely, Your Honor. And I think that when we're looking at this record, the court characterized these calls to Hertz as being gratuitous. And just as Cunningham, you noted, the trooper also testified that he had not made such a similar call in the past. However, we do look at the conduct of the officers under the objective standard as we discussed at length in our reply brief. And so I don't want to repeat that argument too much, but look at all the cases that have been cited in our briefs where this sort of situation happens. A defendant is driving a car that's a rental car, name's not on the registration agreement. And in all the cases, there's been some question about whether or not their defendant was responsibly driving that. It went up to Bert to determine whether or not there's even a legitimate explanation of privacy in that situation. Counsel, what I find important is Terry v. Ohio. This is a Terry stop case. Right. He was stopped for speaking. That was the purpose of the stop. Terry very strongly suggests the stop can only last long enough to reasonably conclude the reason for the stop. Right. I understand under the facts of this case that that was concluded quite soon and that a 25-minute delay occurred over the rental agreement whose car. Don't those facts indicate a violation of Terry v. Ohio? Yeah, I believe that issue was actually clarified in Rodriguez because what Rodriguez tells us is that the duration of the stop is tied with its mission and the mission includes the reason that the officer pulled the defendant over, say in this case to write a speeding ticket, which could have lasted only a minute to be sure. But Rodriguez goes on to say that there's also related safety concerns. There's also concerns about whether or not the car is being responsibly driven. And that's why we think that under Rodriguez, the mission of the stop includes calling her to determine whether or not the defendant could actually drive this car. Neither of those exceptions include ownership of the vehicle. Well, a registration check. It's about safety in driving, not ownership, not rental. I think that's what the registration check really goes to, whether or not this person is a registered owner of the car. And in a case where you have a rental agreement, which in part if you look at Justice Stevens' opinion, he notes that in all these cases where there's a rental agreement, there are typically several exceptions. It's very common across the United States for these rental agreements to specify that if you're not on the rental agreement, you can't drive it. And so I think that's what the common sense understanding of this case is, is that Trooper Winroth knew that if the defendant wasn't on the rental agreement, which he candidly admitted, then the question is, who can drive this car? Are we going to leave it on the side of the road after defendant's already been found to have committed a Class B misdemeanor, which by itself would be an arrestable offense under Atwood? I think you're getting ahead, putting the cart before the horse here, because it's clear that he didn't get to that until after he had talked to the people at Hertz. And I'm trying to figure out, since the Trooper testified that he had never before looked into the rental agreement when he stopped the driver of the rental car, what was it about this and the safety factors that you are touting, that I'm trying to figure out exactly what that was. And if it was so important, he'd never done it before, but in this case he did, and you're trying to make this into an exception to Terry, and I'd like you to tighten that up for me, because I'm not seeing the connection at all. The question is, what should an officer do when he's faced with a situation where he knows that this defendant cannot drive this car? He stopped the car. He knows that the defendant's already committed an arrestable offense. What should an officer do? If a party is not named on a rental agreement, I imagine that this happens a lot, where family members rent a car and then somebody else is driving it. Isn't that a contractual arrangement between the rental car company and the person that they rented it to? Is it a crime for a person who's not on the rental agreement to drive that car? I mean, what's the crime here? I'm not understanding that. Well, I think that's actually an important point, because we're talking about the community caretaking exception. If the officer wasn't investigating a crime, then he'd call the parents. Counsel, is it a crime to drive a vehicle in Illinois without proper insurance? Is it a violation of the law? I believe it is, Your Honor. Yes, it is. So do we know this gentleman had insurance on this vehicle? Again, the record just wasn't developed on that. My point is we need more information on this case. But anyway, so the officer didn't know. He had no idea. So he made a call, and he found out he wasn't an authorized driver. No proof of insurance, right? Right. Okay. Thank you. Was there any testimony that the officer asked the driver whether he was insured? No, the question was never asked. Okay. The only information that came out was a defendant's record. If you stop the driver for a violation, it would make more sense to ask the driver if he has insurance or whatever he needs, then to call a third party to ask about insurance, wouldn't it? Your Honor, I think the information could be obtained from the driver if he had it. Again, we just don't know. There's no evidence that this trooper asked the driver anything about insurance. He just called the rental car company for reasons that are still unclear from the record. Yeah, I think that in our brief we cited the Seventh Circuit opinion, which noted that almost stated explicitly that it would be reasonable to call the rental company in this case and, again, look at how many cases across the country involve an officer who pulls over someone who's driving a rental car and finds out that they're not authorized. I still would like you to tell me how was the trooper's inquiry to Hertz related to the enforcement of the traffic code or traffic safety? I'm not making that connection from your argument. Maybe another way of looking at it is what could he do with that car at that point? The person actually on the rental agreement isn't there to drive it away. The defendant's by himself. It's on the side of the road, and the defendant has already committed a Class V misdemeanor, which is an arrestable offense. Was there any evidence that the trooper attempted to call the person whose name was on the rental agreement? He said he did not. Pardon? He said that he did not. Although, you guys, again, I would just say briefly. Well, doesn't the fact that he had never before delayed a stop to contact the owner of the vehicle suggest that this wasn't an ordinary inquiry that he normally makes when he stops people speeding or whatever other traffic offenses he's stopped them for? Ordinary, I would assume, means something that he ordinarily does in the course of his duties as a trooper. And he said he'd never done this before when he'd stopped anybody. Right. So why was this an ordinary stop? And I'm still not understanding how it's related to the safety concerns that you're raising. So in terms of whether or not we should look at his subjective intentions, I think the law is clear on that, that we don't. And we don't because officers who are expected to follow the orders and opinions of this court need to know what the rule is. So we look at, objectively, under the Fourth Amendment, were their actions reasonable? Was it? That looks beyond what the officer believes at the time, what the officer has done before. We noted in our reply brief that general orders and customary practices can be relevant to this, but the question at the end of the day, is that an objective standard? Was it reasonable? So I don't think that it's proper at this point to look at the fact that the officer said he hadn't done it before as the end of the discussion there. Okay, let me ask you this. Should there be a distinction between allowing this kind of prolongation of a stop for rental vehicles as opposed to non-rental vehicles? Say he was driving his neighbor's car. It wasn't a rental vehicle, but it wasn't registered to him. All right. Should we make a distinction to allow this inquiry for rental vehicles but not for other non-rental vehicles? Is that what you're suggesting? Well, yeah. I think that we cited United States v. Jones in every best attempt circuit case where the law enforcement officer stopped someone for up to 30 minutes and the circuit court found it to be reasonable. What they noted was that, first, the duration was reasonable because the length of time only related to what was necessary for the officer to determine the information that was being sought. My question is a little more narrow than that. Because we're dealing with a rental vehicle and the officer called the rental company, I'm asking you, are you asking us to make a distinction to allow this kind of inquiry for rental vehicles but not for other non-rental vehicles that are driven by non-owners? So I think to narrow it down, what I was trying to say is that when you have a rental car where there is a rental agreement, and these rental agreements commonly have terms which will say that if you're not on a rental agreement, you can't drive the car, then it becomes reasonable under those circumstances to call the registered owner of the car, in this case, Hertz, and to say, what do you want us to do with your vehicle which is being driven by someone who isn't authorized to drive it? And so that's why the 25-minute delay here was reasonable as within the mission of the traffic stop. Counselor, weren't the drivers in Byrd and Rodriguez authorized drivers? Right. That issue didn't come up in Rodriguez. This case is different because he wasn't an authorized driver, correct? Correct. Thank you. And I see that I'm quite close to the end of the time I wanted to say, so I just wanted to very briefly touch on the legitimate expectation of privacy that we have addressed this in our brief, but just very briefly, we contend that the defendant did not show that he had a legitimate expectation of privacy, even under Byrd, where the only facts to show in his favor was that he was a sole occupant of the vehicle. And so, where Byrd did not endorse a bright-line rule, yet it was the defendant's burden to establish that he had a legitimate expectation of privacy, and he failed to do so, the court should reverse for that reason as well. Let me ask you this. If we find that the trooper unreasonably delayed the traffic stop to contact her, do we need to reach the issue of standing for challenges, sir? Well, it's the defendant bears the burden to establish both. Pardon? The defendant bears the burden to establish both. So if this court does find that there is a Fourth Amendment violation, the question still becomes whether or not the defendant had what used to be called standing, is now called legitimate expectation of privacy, to even challenge that. So this court can still reverse the circuit court's opinion, I'm sorry, the circuit court's ruling, because the defendant failed to establish that he had a legitimate expectation of privacy. What evidence is there of the defendant's legitimate expectation of privacy? Again, he was a sole occupant of the car. That seems to be it. If there are no further questions, I would ask to reserve the remainder of my time for rebuttal. Thank you. Thank you. Again, good afternoon. May it please the courts. I do agree with the state that there are two issues before this court. The first being the Fourth Amendment issue, and the second being Mr. Casino's expectation of privacy. The first one, since the state dealt with that first, I'll deal with that first as well. You're looking at a 25-minute delay, and the trooper's own testimony was that if you were just going to issue him the ticket, it would have taken a minute. A minute. So you're looking at an additional 24 minutes because this trooper decided to call first. Well, Byrd sort of answers this question for us. Byrd tells us that there is no difference between a rental car and a privately owned car. A rental car with a driver who's authorized to drive that. Respectfully, I disagree with that interpretation. Okay. In fact, to quote from Byrd, as a general rule, someone in otherwise lawful possession of a vehicle. There you go. Otherwise lawful possession. Do we know he was in lawful possession? Well, that's interesting, Judge. Well, do we know it? Well, yes, I believe we do. We have the car key. The car was not reported stolen. But it could have been stolen five minutes before he drove it. But that could be in any car where my neighbor was driving my car. It could have been stolen. Yet this trooper never even bothered calling once when he saw in a private car the night that he was driving it. I don't know. That's very wavering, but continue. Well, it isn't because Byrd tells us that there is no difference between rental and private. Well, I disagree with you, but continue, please. That the expectation of the driver is what is looked at, not the car. Not the car's status. It's the expectation of the driver. And that driver was authorized to drive in Byrd. Well, he was not. He was not on the lease agreement. But he was authorized to drive. But that's the entire purpose of Byrd, to say there is no difference. And when you look at the second argument, let's go there. The second argument that this case deals with is a reasonable expectation of privacy, right? I mean, that's what we're talking about, unauthorized, et cetera, et cetera. Byrd also points out to us that what we need to look at is the ability to exclude others. That's what we need to look at. Not who gave permission to who, but the ability to exclude others. It's a possessory interest. And the ability to exclude others, as the Byrd court told us, was present in that case as it is in here. Well, how do we connect the ability to exclude others with the case before us? Well, that's what the Byrd court did. The U.S. Supreme Court did. Well, how did this driver have the ability to exclude others is my point. Well, as the Byrd case says, he had the ability to stop a carjacker. If somebody was going to unlawfully steal from the car, that was his ability. And that is what the U.S. Supreme Court says, is that it is his ability because he is the driver. I know there's a lot of different cases with passengers. I understand that. But this is alone in a vehicle. Alone in a vehicle. Somebody who just stole a vehicle was alone in a vehicle. Did they have the right to prohibit a carjacker? That's not the case. Why? That isn't our case. I'm just saying, that's your argument you're making, counsel. I'm not arguing that it was stolen. I understand that, but you're making an argument someone alone in a vehicle has this right to privacy. Yes, I am. Okay. I am. And the exception is when a car is stolen. Of course that's the exception. But that's not here. This is not a stolen car. Your Honor, the Burke case, in my reading of it, went as far as to say if you have the ability to exclude others, then you have a reasonable expectation of privacy in that vehicle. And, Your Honor, going back to the first issue, I know you were asking the State about insurance. I would like to point out in the record, the trooper testified that he had already run the registration prior to getting out of the car and interacting with Mr. Cassino. And when he went to the car, he asked for his driver's license and the rental agreement. He never asked for insurance. Ever. He asked only for the registration and the rental agreement. Once he found out the registration was for a rental car, wasn't it reasonable then to find out if it had insurance by calling the rental company? Wasn't it more reasonable for him to have asked? I'm just saying, is it unreasonable? Is it unreasonable for the policeman to have called the rental car company? Yes. Unreasonable. It is unreasonable that he delayed the simple one-minute traffic stop for 25 minutes by calling a rental company. Well, what do you mean 25 minutes? Do we know? Pardon? Was he on hold? Was he talking to 15 different supervisors? Well, it's interesting because the record tells us that he talked to the, I believe it was like the legal department. So he wasn't calling for insurance. He didn't even know this, counsel. He didn't testify to it. Well, nobody asked him the question. Well, when asked, he did say that he was connected to other people. Initially, that's what took so long he was on notice. Right. And they had to connect him to this special department. Right. And that's when that department said, no, we want the car back. So why, as a private owner of a vehicle, if I lend it out to my sister, is it okay for her to be delayed for 25 minutes, half hour, an hour, for the police officer to call me to find out if I want it? And since when do we have troopers that are enforcing civil contracts? It's not the trooper's job. This is to enforce the law, not a civil contract. This is a civil contract between the renter and us. So you suggest the officer was remiss, it was wrong for him to call to find out if this car was insured? First of all, we don't know if he asked about insurance. I understand. I'm asking you the question. Would that be unreasonable for a police officer to do? Yes, and you can ask the driver. Is it insured? Do you have insurance? What if he has his own insurance that covers him on any kind of driving? On a rental car? Yes. There's such a thing? Yes. Even if you're not the renter? Even if you're not the renter. If I rent a car, I always turn down their insurance. What do you mean the percentage of insurance is out there, counsel? It can be a very low percentage of insurance where you're covering every car, even a rental car. Yes, I always turn it down because I am covered. I understand, but I don't know if this man had insurance, the driver in this car. Well, wouldn't it have been nice if the trooper asked? Well, it might have been also reasonable to call. We've all been, or I can't say we've all been, as a person who has been stopped for a minor traffic violation, registration, insurance, license, and that's it. Counsel, let me ask you, is there anything from the record that tells us whether Mr. Casino was in, quote, lawful possession or control of this car other than the fact that he was sitting in the car? What else do we have? He was sitting in the car, he was driving it, and he was alone. That's what we have. And Byrd tells us that is enough. I think it was fine to say it's an automatic expectation of privacy, but they came awfully close. You know, it's interesting, when we look at it. Wasn't it the defendant's burden to show that he was, in fact, authorized to use the rental car, or that either by Hertz or by the person named on the rental agreement, wasn't that his responsibility to express that in some way? Well, Your Honor. At the motion to suppress. I understand. And I understand it's his burden, but when we look at other cases that don't involve rental cars, that involve just a driver, just a driver of a car, there is somewhat of an automatic expectation of privacy in that vehicle. I'm going to ask you the same question I asked your opponent. So should we be making an exception because this is a rental vehicle as opposed to a non-rental vehicle that's driven by a non-owner? Well, Byrd tells us no. And we can even see going forward, there are apps now where you can rent private individuals' cars. I mean, how absurd is this going to go? And in practical purposes, that you rent an individual's car and you get pulled over, that person gets called maybe, if the trooper can find them, maybe two hours down the line. This is what Rodriguez wants us to avoid. What Rodriguez tells us is, do your reason for your stop. And there's a couple other things you can do, too. Look at registration. Let's see if it's expired, if the car is stolen. It wasn't in this case. Ask for insurance. He didn't even bother doing that. And check the driver's license. If the trooper testified, it was valid. So that's where the stop should end. He gets his citation and he goes on his way. That's it. And this trooper decided, I'm going to go all these steps forward even though I've never done it. Because I think that there is a difference between a rental car and a private individual loaning their car out. And there is no basis for him to do that. None. There's no basis at all. Not in law. Certainly there is no general rule to testify that. There's no general order saying he should do that. There's no law in the state of Illinois that says, you know, rental cars have certain rights that other cars don't. And we also have to remember is what Byrd should teach us all is that the focus is not on the car. It's a 9-0 decision. The focus is on this traffic violation and on the control of the vehicle. Counsel, wasn't Byrd remanded to the circuit appellate court or whatever circuit that was in? Yes. For issues to get more information, factual information, so the court can make an appropriate decision. Isn't that true? That is true that the government brought up. Isn't that telling something we should do in this case, get more information about what really happened here? No, I don't, respectfully. Do you think the 25 minutes was too long of a duration? Yes. Why? Because the purpose of the stop was to issue a citation for speeding. And the trooper testified that would have taken a minute. Anything else? No. Any other questions? No, not for me. Thank you. Thank you. As I think you guys picked up on, Byrd tells us that the fact that the driver is not listed on the rental agreement does not per se defeat the possibility that he could have a legitimate expectation of privacy, but remanded for development not only of the facts but of the arguments because it was raised for the first time in the Third Circuit. And so the Supreme Court said that the Third Circuit or the district court had to consider that. We don't have anything here. Oh, what we could have is a defendant who, through a straw man buyer, rented this car so that the defendant could transport over 250 grams of narcotic, which would probably give him a legitimate expectation of privacy in the car, where he knew that he wasn't allowed to drive it for that purpose. And furthermore, Rodriguez tells us that the call to Hertz was within the mission of the traffic stop. The call to Hertz, whatever we want to think about it, was done for the purpose of determining whether or not the car was responsibly driven. At any rate, it was not done for the purpose of criminal investigation,  And if there's no further questions, for these reasons and the reasons cited in our briefs, we respectfully ask for support to reverse the orders of the circuit court. Thank you. Thank you, counsel. Thank you. Thank you both sides for your arguments. The matter will be taken under advisement and court is adjourned.